# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #027

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **26th day of June, 2019**, are as follows:

**PER CURIAM**:

2017-KP-0649      STATE OF LOUISIANA  v. DARRELL TOUBYA THOMAS (Parish of Caddo)

Accordingly, we find the district court erred in failing to correctly apply the deferential Strickland standard. Therefore, we vacate the district court's ruling that granted defendant a new trial, and we reinstate the conviction and sentence.

VACATED.

**SUPREME COURT OF LOUISIANA**

**No. 2017-KP-0649**

**STATE OF LOUISIANA**

**VERSUS**

**DARRELL TOUBYA THOMAS**

**ON SUPERVISORY WRITS TO THE FIRST JUDICIAL
DISTRICT COURT, PARISH OF CADDO**

**PER CURIAM**

Defendant Darrell Toubya Thomas was unequivocally identified by both Traavis and Stephan Harris as the person who exited a black SUV and commenced firing at them. The shooting took place near the Take-a-Bag store on Milam Street in Shreveport on December 13, 2010. Traavis's right leg was amputated because of the shooting.

Defendant was not a stranger to the Harris brothers, and he left town after the shooting. Defendant, his girlfriend Ronisha Taylor, and her mother Rhonda Taylor admitted at trial that they were present during the shooting in a black SUV belonging to defendant's mother. All three said they heard gunshots, they denied seeing the shooter, and they denied that anyone else was in the SUV with them. The jury who heard this testimony found defendant guilty of attempted first degree murder, and the district court sentenced him as a second-felony offender to serve 55 years imprisonment at hard labor without parole eligibility.

Just over one month after trial, defendant through new counsel filed a motion for new trial claiming that Cordarly Chapple arrived with defendant and the

Taylors in the SUV, and that Chapple was the real shooter. According to defendant, Rhonisha and Rhonda would have identified Chapple if trial counsel had asked them. Defendant also provided the district court with an affidavit by Chapple in which he claimed he was the shooter and that defendant was innocent.

After the district court denied the motion for new trial, the court of appeal affirmed the conviction and sentence. *State v. Thomas*, 48,530 (La. App. 2 Cir. 12/4/13), 131 So.3d 84. The court of appeal found that a new trial was not warranted by newly discovered evidence:

> The claim that Rhonda and Rhonisha knew who the shooter was and would have testified that it was Chapple if only defense counsel had asked them shows that the evidence upon which the motion for a new trial is based is not newly discovered evidence. If Chapple was in the vehicle with the defendant and the Taylors, then they all would have known that he was the shooter. However, no one mentioned Chapple at trial or even that someone else was with them in the SUV. Moreover, a review of the trial transcript shows, contrary to what has been asserted by Mr. Keene in support of the motion for a new trial, that the Taylors had the opportunity when questioned by trial counsel for the defense to identify the shooter as Chapple.
>
> . . . .
>
> The above testimony from trial shows that trial counsel, Mr. Scarborough, directly questioned the Taylors about whether they could identify the shooter. Both women testified under oath that they could not. The Taylors had the opportunity to identify Chapple as the shooter and did not do so. The purported new evidence could have easily been discovered prior to or during trial if the Taylors had gone to the police with the information they apparently now claim to have had about the shooter or if they had testified differently at trial.

*Thomas*, 48,530, pp. 10–11, 131 So.3d 90. The court of appeal also commented unfavorably on defendant's claim that trial counsel rendered ineffective assistance in investigating the case:

> Here, defendant claims that trial counsel did not properly investigate the case to discover the real perpetrator of the crime, allegedly Chapple. As previously addressed, trial counsel directly questioned the Taylors at trial about whether they could identify the shooter, and both testified that they could not. None of the defendant's witnesses, including the defendant himself, identified any other person as the

2

shooter when questioned by trial counsel. The jury heard and rejected the testimony that the defendant was not the shooter. This case turned on the credibility of the witnesses, and the jury chose to accept the testimony of the Harris brothers, who identified the defendant as the shooter within hours of the incident, over the testimony of the defendant and his witnesses, who simply claimed that the defendant did not do it.

*Thomas*, 48,530, p. 13, 131 So.3d at 91–92. Nonetheless, the court of appeal relegated this claim to future collateral review where additional evidentiary development could occur:

> Nevertheless, the defendant did not have the opportunity in the trial court to produce evidence to show that trial counsel was ineffective in investigating the matter and failing to discover that Chapple was, allegedly, the actual perpetrator. Though we note from the record that trial counsel did question the defense witnesses about the actual shooter during their testimony, the record does not contain sufficient evidence to allow this court to otherwise evaluate an ineffective assistance of counsel claim as it otherwise relates to the Chapple affidavit. Therefore, we pretermit any ruling on the ineffective assistance of counsel claim, which is preserved for the defendant to raise, if he so chooses, by application for post-conviction relief.

*Thomas*, 48,530, pp. 13–14, 131 So.3d at 92.

That evidentiary development followed albeit without the benefit of trial counsel's testimony because he was by then deceased. Chapple also invoked his Fifth Amendment right against self-incrimination and refused to testify at the evidentiary hearing.

Rhonda Taylor testified that Chapple was in the SUV with her, defendant, and Rhonisha when they drove to the scene, and that when they arrived Chapple stepped out and began shooting. When impeached with her trial testimony that she, Ronisha, and defendant were the only ones in the SUV and that she did not see the shooter, she explained she was frightened and that there were several people shooting. Ronisha Taylor testified that Chapple "came out of nowhere, shooting" and she initially claimed (but then retracted) that she had identified him as the shooter at trial. She then also explained that she testified at trial that she had not

3

seen the shooter because she was scared. Finally, an investigator for the Public Defender's Office, which was appointed to represent defendant originally before he obtained private counsel, testified he had interviewed the Taylors. They told him that there was an unknown man with them in the SUV. They also told him they did not see the shooter. The investigator was unable to obtain the unknown man's identity from defendant.

The testimony of Rhonda and Ronisha Taylor at the evidentiary hearing contained numerous inconsistencies, was contradicted by their testimony at trial, and appeared malleable and subject to revision as it progressed. The district court acknowledged that these witnesses lacked credibility. Nonetheless, the district court found defendant was entitled to a new trial because counsel rendered ineffective assistance. The district court erred.

Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this Court in *State v. Washington*, 491 So.2d 1337, 1339 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.

The *Strickland* test of ineffective assistance affords a "highly deferential" standard of review to the actions of counsel to eliminate, as far as possible, "the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. A court therefore "does not sit to second-guess strategic and tactical choices made by trial counsel." *State v. Myles*, 389 So.2d 12, 39 (La. 1980). As such, there is "a strong presumption that counsel's

4

conduct falls within the wide range of reasonable professional assistance" and merits "highly deferential" treatment. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

Defendant fails to show that counsel acted unprofessionally when his investigation failed to identify Chapple as an alternative suspect. Accepting for the sake of argument that Chapple arrived in the vehicle with defendant and the Taylors and that they watched as he started shooting, defendant and his witnesses actively and repeatedly concealed that information until after trial. Post-trial counsel only learned this information from defendant and the Taylors, and defendant fails to show any other pathway by which trial counsel could have discovered Chapple's alleged involvement. The record shows that the Taylors told pre-trial investigator Fred King they did not see the shooter, the police were unable to locate any witnesses who could identify the shooter (other than the Harris brothers, who identified defendant as the shooter), and the Taylors and defendant all testified at trial that they did not see the shooter.

Defendant also claims he is factually innocent of the shooting. Notably, however, the district court did not afford relief on that basis. Furthermore, an affidavit accompanied by the affiant's refusal to testify in conjunction with the testimony of two witnesses who are found to lack credibility by the district court would be not be enough to show entitlement to relief. *See generally State v. Conway*, 01-2808 (La. 4/12/02), 816 So.2d 290, 291 (assuming post-conviction claims of actual innocence not based on DNA evidence are cognizable, they must be supported by new, material, noncumulative and conclusive evidence which meets an extraordinarily high standard, and which undermines the prosecution's entire case).

The district court also based its ruling on the determination that trial counsel

5

should have objected to the State's references to an unrelated but highly publicized murder. The trial transcript reflects, however, not that the State remarked on an unrelated but highly publicized murder trial; the State cross-examined defendant about his association with a person who was involved in an unrelated but highly publicized murder as a means of impeaching defendant's testimony on direct as to why the victims might wrongly assume he was the one who shot at them. Since the prosecutor's comments were made in the context of permissible cross-examination, counsel had no grounds for a successful objection, so did not err in failing to object.

Furthermore, the *Strickland* court held that the "defendant must [also] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2066. Here, the State presented testimony at trial from the two victims, who had known defendant since childhood, that defendant ran at them while firing several shots, striking Traavis Harris in the leg. Defendant offers nothing to undermine the strength of this identification.

Accordingly, we find the district court erred in failing to correctly apply the deferential *Strickland* standard. Therefore, we vacate the district court's ruling that granted defendant a new trial, and we reinstate the conviction and sentence. Defendant has now fully litigated his application for post-conviction relief in state court. Similar to federal habeas relief, *see* 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against

successive filings mandatory. Defendant's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, defendant has exhausted his right to state collateral review. The district court is ordered to record a minute entry consistent with this per curiam.